STATE OF MISSOURI at the Relation of the COUNTY OF ST. LOUIS, Relator, v. STATE HIGHWAY COMMISSION.—86 S. W. (2d) 1066.

Court en Banc, October 18, 1935.

*Robert F. Stanton, Hamp Rothwell* and *Wm. J. Becker* for relator; *Speed Mosby* and *Walter Wehrle* of counsel.

*Louis V. Stigall* and *Wilkie B. Cunnyngham* for respondent.

FRANK, C. J.—Mandamus to compel the State Highway Commission to set up on its books a refund credit in favor of St. Louis County in the sum of $216,676.18 to reimburse said county for the amount expended by it in securing the right-of-way for a certain road in said county which was taken over by the State Highway Commission as a permanent part of the State highway system, on July 2, 1929. Our alternative writ issued, respondent made return thereto to which relator replied. At the request of both parties a special commissioner was appointed to take the evidence on the issues joined and report his finding of facts and conclusions of law to this court.

The cause was submitted to the special commissioner on an agreed stipulation of facts. We gather from the agreed facts that prior to the controversy in question the county had a refund credit on the books of the State Highway Commission in the sum of $910,620.84 which arose from the taking over of other roads not here in controversy. On January 23, 1925, the county court by order entered of record authorized the State Highway Commission to construct for said county the road in question and pay for same out of the $910,-620.84 refund credit due it from the State. Some time after the making of this order by the county court, the county proceeded to get the necessary right-of-way for the road, and the commission proceeded with the construction of the road for said county pursuant to aforesaid court order. On July 2, 1929, after considerable construction work had been done on the road, the commission, at a regular meeting, by a resolution duly passed, took over the unfinished road as a permanent part of the State highway system. Up to July 2, 1929, the date on which the road was taken over by the State, the

commission had constructed and contracted for the construction of certain parts of the road at a cost of $268,541.18, and paid for same out of the refund credit due the county, all of which was done pursuant to orders and directions of the county court. Up to the date the road was taken over by the State, the county had secured right-of-way for said road at a cost of $109,840.13, which was paid for at the direction of the county, out of the refund credit due the county. After the road was taken over by the State, the county proceeded to secure the remainder of the right-of-way at a cost of $96,069.40, which was paid for at the direction of the county out of the refund credit due the county. After the road was taken over by the State, the commission set up on its books a refund credit in favor of the county in the sum of $268,541.18. The amount of refund credit set up in favor of the county after the road was taken over, being the same as the amount expended on construction before the road was taken over, tends to show that the commission did not consider cost of right-of-way in fixing the value of the road to the State at the time it was taken over.

Both before and after the road was taken over by the State, the county court adopted and presented to the commission orders and resolutions directing the commission to pay for all of the right-of-way necessary for said road and charge all sums so paid against the refund credit due the county. The first resolution adopted by the county court and presented to the commission reads as follows:

"WHEREAS, the State Highway Commission is about to begin the construction of a refund road in St. Louis County, under the provisions of Section 33 of the Centennial Road Law, commonly known as the Denny Road, and

"WHEREAS, said Commission has requested this court to secure the necessary right-of-way in connection with the construction of said refund road, and

"WHEREAS, this court has already expended in securing a portion of said right-of-way the sum of $8,220.90, and

"WHEREAS, this court has not sufficient funds for the purpose of securing the right-of-way for said refund road.

"THEREFORE BE IT RESOLVED, that the State Highway Commission pay for all of the right-of-way necessary for said refund road, and charge said sum or sums against the refund credit of this county, and

"BE IT FURTHER RESOLVED, that said Commission be and hereby is requested to refund to St. Louis County said sum of $8,-220.90 heretofore expended by this court in securing a portion of the right-of-way necessary for said refund road as aforesaid."

Like resolutions were adopted by the county court and presented to the commission covering every dollar that was expended for right-of-way both before and after the road was taken over by the State.

.The constitutional amendment adopted in 1928 which is now designated as Section 44a of Article IV of the Constitution of Missouri, provides, among other things the following:

"The proceeds of the sale of the seventy-five million dollars ($75,-000,000) of additional bonds herein authorized shall be expended under the direction of the State Highway Commission for the following purposes: . . . to reimburse the various counties and political or civil subdivisions (including road districts) of the State for money expended by them in the construction or acquisition of roads and bridges now or hereafter taken over by the State as permanent parts of the State highway system to the extent of the value to the State of such roads and bridges at the time taken over, not exceeding in any case the amount expended by such counties or subdivisions in the construction . or acquisition of such roads and bridges."

Our special commissioner found that when the State, on July 2, 1929, took the road over as a permanent part of the highway system, and set up a refund credit in favor of the county in the sum of $268,541.18, such act was a fixing of the value of the road to the State at the time the road was taken over, at the amount of the credit set up, which necessarily included the $109,840.13 expended by the county for right-of-way before the road was taken over, but did not include the $96,069.40 expended by the county for right-of-way after the road was taken over by the State. The commissioner also held that after the State took the road over as a permanent part of the State highway system, the Highway Commission had no authority to require the county to expend money for right-of-way for a state highway, and the county had no authority to expend county funds for that purpose.

The commission's final conclusion was that the county is entitled to a refund credit for the $96,069.40 which it expended for right-of-way after the road was taken over by the State as a permanent part of the highway system, and that a peremptory writ of mandamus should go compelling the Highway Commission to set up a refund credit for that amount in favor of the county.

Both parties filed exceptions to the commissioner's report. The county contends that it is entitled to be reimbursed for the entire amount expended for right-of-way both before and after the road was taken over by the State, which amount is $205,944.53, and that a peremptory writ of mandamus should go commanding the commission to set up a refund credit in its favor for that amount. The commission contends that the county agreed to secure and pay for the right-of-way out of its own funds, and, therefore, is not entitled to any refund credit, and for that reason our alternative writ of mandamus heretofore issued should be quashed.

As we read the record, neither the constitutional amendment of

1928 nor the statutes dealing with the question of refund credits due a county for the value of roads taken over by the State are of controlling influence here. This case is governed by the agreement between the county and the commission to the effect that in event the county would secure the necessary right-of-way for the road and pay for same out of the refund credit due it from the State, the State would take the road over. Our reasons for concluding that such an agreement was made are as follows:

The agreed statement of facts shows that on March 12, 1929, the commission passed a resolution reaffirming its general policy of not building roads unless the right-of-way be furnished to the State free of charge, and so notified the various counties including relator.

The commission pleads in its return, among others, the following facts:

"That respondent states that it selected and took over Refund Road No. 2 into the traffic system as Route 77 T. R. at the request of relator and with the understanding that the policy of the Commission as to right-of-way should be followed in this case as it had been elsewhere in the State of Missouri, and that no refund would be asked for right-of-way; that it would not have taken over said Refund Route No. 2 into the traffic relief system if it had understood that it would have to refund for right-of-way on said road."

At the time the resolution was adopted by the commission taking the road over, all of the right-of-way therefor had not been secured. The fact that the county thereafter secured the remainder of the right-of-way, and by resolutions adopted and entered of record, directed the commission to pay for same out of the refund credit due it, points unerringly to the fact that the county had agreed to secure and pay for the right-of-way out of its own funds if the State would take the road over under such conditions.

██ Two questions have been suggested, (1) a verbal agreement that the county would secure and pay for the right-of-way if the State would take the road over is not binding on either party, and (2) that after the State took the road over on July 2, 1929, it was then and thereafter a State highway, and the county had no authority to expend county funds to secure right-of-way to widen a State highway.

Answering the first question, the agreement, if verbal, was not binding on either party and was therefore nonenforcible so long as it remained executory. But as both parties acted thereunder and completely performed the agreement, neither can now repudiate it.

As to the second question, our judgment is the record does not show that the county expended county funds for right-of-way for a State highway. The road was still a county road at the time the county agreed to secure and pay for the necessary right-of-way to widen it. The clear meaning and intent of the agreement was that

if the county would secure and pay for the necessary right-of-way to widen the county road the State would take it over as widened. The agreement being one relating to a county road, the mere fact that the county did not perform its part of the agreement until after the adoption of the resolution by which the State took the road over did not convert the agreement relating to a county road into one relating to a State road. Otherwise stated, the time of the performance of the agreement by the county did not and could not change the essence of that agreement. When the county secured and paid for right-of-way out of its own funds after the road was taken over by the State, it was not expending county funds on a State highway, but was merely performing the agreement it had made before the road was taken over by the State.

Our conclusion is that the county is not entitled to any refund credit for money expended for right-of-way. The alternative writ of mandamus heretofore issued should be quashed and the peremptory writ denied. It is so ordered. All concur, except *Ellison, J.*, absent.